## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

------------------------------------------------------------x

PEOPLE FOR THE AMERICAN WAY FOUNDATION,
2000 M Street, N.W., Suite 400
Washington, D.C. 20036
        and
PUBLIC EMPLOYEES FOR ENVIRONMENTAL
RESPONSIBILITY,
2001 S Street, N.W., Suite 570
Washington, D.C. 20009

:
:
:
:
:
:
:
:
:

Case No. 1:05-cv-00152-EGS

                             Plaintiffs,

        - against -

NATIONAL PARK SERVICE,

                           Defendant.

------------------------------------------------------------x

## STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF
## PLAINTIFFS' MOTION TO COMPEL THE PRODUCTION OF MATERIALS

Plaintiffs People For the American Way Foundation ("PFAWF") and Public Employees

for Environmental Responsibility ("PEER") respectfully submit this memorandum of law in

support of their motion pursuant to 5 U.S.C. § 552(a) (4) (B) for a Court order enjoining the

National Parks Service ("NPS") from withholding records and compelling production of

materials designated by NPS as exempt under 5 U.S.C. §§ 552(b) (5) and (6) of the Freedom of

Information Act ("FOIA") and a more detailed index of responsive materials entirely withheld

from production to Plaintiffs.

## PRELIMINARY STATEMENT

Plaintiffs have waited over two years for a complete response to their FOIA request to

NPS, seeking information on NPS's well publicized 2003 decision to edit the informational

video displayed for visitors to the Lincoln Memorial (the "Video" or the "September 2003

Video"). In March 2003, the media first reported that an advisory panel of the NPS decided to edit out of the Video footage of, among other things, gay rights, pro-choice and anti-Vietnam War demonstrations occurring at the Memorial in response to complaints from conservative groups. Plaintiffs' FOIA request sought copies of all materials that refer, reflect or relate to changes to the Video as it appeared in September 2003. When Plaintiffs first submitted their request in October 2003, NPS produced only a copy of the Video and select news clippings reporting on the intended changes to the Video. Instead of disclosing to Plaintiffs all materials required under FOIA, NPS broadly invoked 5 U.S.C. § 552(b) (5), known as "Exemption 5" or the "Deliberative Process Privilege."

After being stonewalled for over fourteen months, in January 2005, Plaintiffs filed the instant Complaint. Even now, nearly a year after the Complaint, NPS has only partially remedied its inadequate production, and still is asserting a blanket invocation of Exemption 5. NPS has provided Plaintiffs with an index of 107 entries (the "Vaughn Index"), which relies on Exemption 5 for 90 different withholdings of redacted information. These Exemption 5 withholdings extend beyond the deliberative process parameters to include factual statements, communications with individuals outside of NPS, the identities of renowned historians and a letter to a member of Congress. NPS has no basis for withholding these materials and must release them to Plaintiffs in full.

In addition, in the months following the Complaint, NPS produced numerous letters and e-mail messages it had received from members of the public concerning the Video. NPS refused to disclose the identity and contact information of these authors, erroneously citing 5 U.S.C. § 552(b) (6) ("Exemption 6") as its basis for these withholdings. However, Exemption 6 is limited to personnel, medical and similar files where disclosure would be an uninvited invasion

of personal privacy.  Accordingly, NPS can not use Exemption 6 to conceal the identities of individuals that voluntarily sent NPS public criticisms of the proposed changes to the September 2003 Video.

Plaintiffs now seek an order directing NPS to produce responsive materials that it failed to disclose.  The Court should order the production of all documents improperly withheld pursuant to Exemptions 5 and 6.  To the extent that the Court is unable to determine whether any particular document should be produced, the Court should conduct an in camera review of the subject documents.  In addition, the Court should direct NPS to produce a revised Vaughn Index that justifies its non-disclosure of materials withheld in their entirety and omitted from the existing Vaughn Index.

## STATEMENT OF FACTS

A.      The Parties

Plaintiffs are non-profit, public interest organizations with tax-exempt status who are dedicated to research and public education concerning the activities and operations of the federal government.  (Complaint ("Compl."), ¶ 2.)[1]

PFAWF is dedicated to the education of its members, supporters and the general public on issues that impact fundamental civil and constitutional rights and the freedoms guaranteed by the Constitution, including improper government censorship and First Amendment freedoms. PFAWF regularly publishes reports, fact sheets, news releases, media briefings and other materials to inform the public and for the public's use in participating in discourse on core issues.  (Id. at ¶¶ 13, 14.)

---

[1]      A copy of the Complaint is attached as Exhibit A to the Declaration of Stephen P. Davidson, dated November 18, 2005 (the "Davidson Decl.").

3

PEER is a national alliance of local state and federal resource professionals.  PEER engages in advocacy, research, education and litigation relating to the promotion of public understanding and debate concerning key current public policy issues, focusing on the environment, public lands and natural resource management, public funding of environmental and natural resource agencies and ethics in government.  PEER educates and informs the public through news releases, its web site and a newsletter that has a circulation of approximately 20,000, including 1,500 environmental journalists.  (Id. at ¶¶ 11, 12.)

Defendant NPS is an agency of the United States Department of the Interior, as defined by 5 U.S.C. § 552(f) (1), and is charged with the duty to provide public access to documents in its possession consistent with the requirements of FOIA.  NPS is responsible for the operation, administration and maintenance of the country's national parks, including the Lincoln Memorial. (Id. at ¶ 15.)

B.   The Lincoln Memorial Video

The Lincoln Memorial was built by NPS as a tribute to President Abraham Lincoln. Among the resources available to visitors to the Lincoln Memorial is an eight-minute informational video created by a group of high school students, which has been shown at the Lincoln Memorial since 1994.  As of September 2003, the Video contained, among other things, photographs and video coverage of demonstrations and other historical events that occurred at the memorial.  (Id. at ¶ 2.)  According to media reports, NPS has undertaken a project to alter the Video in response to complaints from conservative supporters about footage of gay rights, pro-choice and anti-Vietnam War demonstrations in the Video.  (Id.)

4

C.    FOIA Request Letter

On October 30, 2003, Plaintiffs submitted a letter to the NPS's FOIA Officer (the "Request"),  seeking:

    (1)    A copy of any video that was on public display at the Lincoln Memorial Visitors Center (the "Lincoln Memorial") on September 1, 2003 (the "September 2003 Video");

    (2)    Copies of any videos that were created for use and public viewing in the Lincoln Memorial after September 1, 2003;

    (3)    All documents that refer, reflect or relate to the content of the September 2003 Video; and

    (4)    All documents that refer, reflect or relate to "any modification, alteration, cessation or change" of the September 2003 Video.

(A copy of the Request is attached as Exhibit B to the Davidson Decl.)  The Request pertained only to revisions to the September 2003 Video, and did not seek documents concerning renovations to any other aspect of the Lincoln Memorial, such as the photo display, book store, public space or other exhibits.

On January 16, 2004, NPS sent Plaintiffs a letter enclosing a copy of the September 2003 Video and select publicly available media reports concerning NPS's intended revisions to the September 2003 Video, but refused to provide any of the requested documents (the "Denial Letter").  (A copy of the Denial Letter is attached as Exhibit C to the Davidson Decl.)  The Denial Letter confirmed that NPS was developing a revised video for display at the Lincoln Memorial.  NPS represented in the Denial Letter that it had been "unable to locate any documents" that refer, reflect or relate to the September 2003 Video.  (Id.)  Other documents concerning modification to the September 2003 Video were "withheld . . . under exemption 5 U.S.C. 552(b) (5) as interagency or intraagency memorandums or letters which would not be available by law to a party other than an agency in litigation." (Id.)

Plaintiffs timely appealed NPS's withholdings set forth in the Denial Letter by letter dated January 28, 2004 (the "Appeal Letter"). (A copy of the Appeal Letter is attached as Exhibit D to the Davidson Decl.)  Ignoring the twenty-day time limit imposed by FOIA for responding to an appeal, NPS failed to respond to the Appeal Letter or to provide any additional documents.

D.    The Instant Action

Following NPS's inaction, on January 21, 2005, Plaintiffs initiated this lawsuit, which alleges violations of FOIA and the Administrative Procedure Act. (Davidson Decl., Ex. A.)

In response, on May 6, 2005, NPS produced for the first time a set of agency records. After Plaintiffs questioned the completeness of the production, NPS supplemented its production to provide copies of certain documents that had been produced in redacted form.  Then, on July 20, 2005, only after Plaintiffs furnished NPS with information concerning a public e-mail campaign objecting to changes to the September 2003 Video, NPS provided another supplemental production consisting of 4,945 e-mails in redacted form.  In addition, at Plaintiff's insistence, NPS provided Plaintiffs with certain previously withheld attachments to documents that had already been produced to Plaintiffs.

In conjunction with its FOIA response, NPS also provided Plaintiffs with a Vaughn Index, which lists the materials withheld from production by NPS pursuant to FOIA Exemptions 2, 5 and 6.[2]  (A copy of the most recent Vaughn Index, dated September 6, 2005, is attached as Exhibit E to the Davidson Decl.)  Plaintiffs also received a declaration outlining NPS's collection procedure prepared by NPS Communications, Freedom of Information Act and

---

[2]    Plaintiffs do not contest the withholdings made pursuant to Exemption 2.

Tourism Officer, William Line (the "Line Declaration"). (A copy of the Line Declaration is attached as Exhibit F to the Davidson Decl.) Neither the Vaughn Index nor the Line Declaration specify the volume of additional documents, if any, that were withheld in their entirety, and Plaintiffs are still unaware of the extent of such withholdings by NPS.

On October 7, 2005, Plaintiffs submitted to NPS a letter objecting to certain withholdings contained on the Vaughn Index. (A copy of the October 7, 2005 letter is attached as Exhibit G to the Davidson Decl.) On October 14, 2005, Plaintiffs submitted a supplemental objection letter on October 14, 2005. (A copy of the October 14, 2005 letter is attached as Exhibit H to the Davidson Decl.) NPS refused to reconsider its withholdings, and Plaintiffs filed the instant motion to compel production of all documents erroneously withheld.

<u>ARGUMENT</u>

Congress's intent in enacting FOIA was "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." <u>Dep't of the Air Force v. Rose</u>, 425 U.S. 352, 361, 96 S. Ct. 1592, 1599 (1976) (citation omitted); <u>see also</u> <u>Washington Post Co. v. U.S. Dep't of Agriculture</u>, 943 F. Supp. 31, 33 (D.D.C. 1996) (FOIA creates a strong presumption in favor of full disclosure of requested records). "Disclosure, not secrecy, is the dominant objective of the Act." <u>Dep't of the Air Force</u>, 425 U.S. at 361, 96 S. Ct. at 1599, <u>cited in</u> <u>Sierra Club v. U.S. Dep't of Interior</u>, 384 F. Supp. 2d 1, 14 (D.D.C. 2004). FOIA exemptions therefore are "narrowly drafted and narrowly construed." <u>Mead Data Cent. v. U.S. Dep't of Air Force</u>, 566 F.2d 242, 259 (D.C. Cir. 1977).

It is the agency's burden to establish "that one or more of the FOIA exemptions applies when it seeks to withhold requested information." <u>Washington Post Co.</u>, 943 F. Supp. at 33. This burden applies not only to the withholding of a document, but also to government efforts to

justify the redaction of information in a document  See Judicial Watch of Fl., Inc. v. U.S. Dep't of Justice, 102 F. Supp. 2d 6, 10 (D.D.C. 2000) ("the burden is on the agency to show that each disputed withholding or redaction was proper under FOIA").

An agency may fulfill this burden by providing the requester with a Vaughn index. However, because the content of the documents listed on a Vaughn index is known only by the agency, "the requester and the trial judge must be able to derive from the Vaughn index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure." Defenders of Wildlife v. U.S. Dep't of Agriculture, 311 F. Supp. 2d 44, 56 (D.D.C. 2004) (citation omitted).  The agency must "describe the documents with as much information as possible without thwarting the exemption's purpose." Id. (citation omitted); see also The Wilderness Society v. U.S. Dep't of the Interior, 344 F. Supp. 2d 1, 9 (D.D.C. 2004) (noting that conclusory statements are unacceptable; an agency's Vaughn index "must be sufficiently detailed to allow a court to determine whether the claimed exemptions apply to the withheld documents").  In other words, "a Vaughn index must provide a relatively detailed justification specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." Defenders of Wildlife, 311 F. Supp. 2d at 56-57 (citation omitted).

The requirement that an agency detail the rationale for its withholding is particularly applicable to Exemption 5.  "The need to describe each withheld document when Exemption 5 is at issue is particularly acute because the deliberative process privilege is so dependent upon the individual document and the role it plays in the administrative process." Animal Legal Defense Fund v. Dep't of the Air Force, 44 F. Supp. 2d 295, 299 (D.D.C. 1999) (citation omitted).

Given the narrow application of the FOIA exemptions, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such a record after deletion of the portions which are exempt." 5 U.S.C. § 552(b).  Indeed, "[i]t has long been a rule in the [District of Columbia] Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." <u>Mead Data Cent</u>, 566 F.2d at 261 (holding that "if the Air Force decides to continue in its claim that the non-exempt material in [withheld] documents is not reasonably segregable . . . it must provide a more detailed justification than [ ] conclusory statements").

I.   <u>NPS HAS IMPROPERLY WITHHELD DOCUMENTS UNDER FOIA EXEMPTION 5</u>

Exemption 5 of FOIA exempts from mandatory disclosure those matters that are "intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b) (5).  Here, NPS has asserted Exemption 5 too broadly to encompass factual statements, communication with outside individuals, the identities of historians and communications with Congress.  On all accounts, NPS has exceeded the scope of permissible withholdings under Exemption 5.

A.   <u>The Scope of Exemption 5 Is Limited</u>

Rather than respect the narrow boundaries of Exemption 5, NPS has relied on Exemption 5 as a blanket exception.  Looking at the context of NPS's Exemption 5 withholdings by examining the produced portions of the documents, NPS has refused to produce (1) purely factual statements, (2) statements that are not deliberative and (3) statements that appear not to involve pre-decisional communications regarding changes to the September 2003 Video. Because neither of these categories of documents is entitled to Exemption 5 protection, these documents must be produced to Plaintiffs.

Factual accounts do not qualify for Exemption 5 withholding. See Mapother v. Dep't of Justice, 3 F.3d 1533, 1537 (D.C. Cir. 1993) ("factual material must be disclosed"); Judicial Watch v. U.S. Postal Serv., 297 F. Supp. 2d 252, 261 (D.D.C. 2004) ("factual accounts of events do not fall under Exemption 5"). Rather, to qualify under Exemption 5, a document must be both predecisional and contain deliberative opinions, recommendations or advice. See Vaughn v. Rosen, 523 F.2d 1136, 1144 (D.C. Cir. 1975) (to be exempt, materials must "be part of agency give-and-take, of deliberative process, by which the decision itself is made"); Mead Data Cent. v. U.S. Dep't of Air Force, 566 F.2d 242, 258 (D.C. Cir. 1977) ("Predecisional materials are not exempt from disclosure under the Freedom of Information Act merely because they are predecisional; they must also be part of the deliberative process within a government agency."); Mapother, 3 F.3d at 1537 (a document "will be covered by the deliberative process privilege if, and only if, its contents are 'deliberative' in character"). The "predecisional" threshold requires that a document be "generated before the adoption of an agency policy." Sierra Club v. U.S. Dep't of Interior, 384 F. Supp. 2d 1, 15 (D.D.C. 2004),  (citation omitted).  A document loses its predecisional status once "it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." Defenders of Wildlife v. U.S. Dep't of Agriculture, 311 F. Supp. 2d 44, 59 (D.D.C. 2004), (citation omitted).  "Deliberative" documents "reflect[ ] the give-and-take of the consultative process." Sierra Club, 384 F. Supp.2d at 15.

Therefore, a document that was simply sent to, reviewed or relied upon by an agency employee may not be withheld.  Indeed, "it is not enough to assert, in [the] context of Exemption [5] … that a document is used by a decision maker in determination of policy." Vaughn, 523

F.2d at 1143. Instead, the "document must be a direct part of the deliberative process, making recommendations or expressing opinions on legal or policy matters." Id. at 1144.

Here, NPS has used Exemption 5 to withhold portions of communications that do not meet the predecisional and deliberative requirements. For instance:

- Entry 5 on the Vaughn Index is an e-mail regarding an NPS employee's appearance on a television show. NPS has redacted the employee's one line response to an e-mail asking, "How did it go?" NPS claims that Exemption 5 applies, and the Vaughn Index states that the redacted text "describes a NPS employee's perceived reaction to a television show." (Davidson Decl., Ex. E, p. 21.)

- Entry 9 on the Vaughn Index claims that Exemption 5 applies to "reactions to and interest in news coverage, and what this might mean for the NPS and what direction is to be considered." (Davidson Decl., Ex. E, p. 23.) By this very description, this entry does not meet the Exemption 5 requirements. The redacted e-mail supports this view. It states, "Just wanted to let you know that the video that has been playing _____ has become controversial. Conservative groups are going after it _____ shown the video to the Director, Assistant Secretary, _____ Congress now has about 5 copies . . . ." (Davidson Decl., Ex. I.)

In both instances, these redacted statements appear to be factual (i.e. the appearance went well, the Lincoln Memorial video has become controversial) and in any event do not either make a recommendation or express an opinion on a policy matter as required to be considered deliberative. See Vaughn, 523 F.2d at 1144.[3]

---

[3]   Although the redactions make it difficult for Plaintiffs to discern the substance of the majority of the withholdings at issue, by way of example, certain withheld statements appear to contain, either in whole or in part, no deliberations or factual accounts, or do not relate to the revisions to the September 2003 Video. In addition to the examples delineated above, these entries include numbers 2, 10, 12, 48, 49, 63, 65, 77, 78, 82 and 86. (These documents are attached as Exhibit I to the Davidson Decl.)

Accordingly, where NPS has improperly withheld statements pursuant to Exemption 5 that are purely factual, not deliberative, and that do not deal with decisions regarding changes to the September 2003 video, the Court should require NPS to produce all such withholdings.[4]

B.      Only Inter-Agency And Intra-Agency
        Communications May Be Withheld Under Exemption 5

Exemption 5 permits agency to withhold only "[i]nter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b) (5).  It "exempts those documents . . . normally privileged in the civil discovery context." Nat'l Labor Relations Bd. v Sears, Roebuck & Co., 421 U.S.132, 149, 95 S. Ct. 1504 (1975).  The exemption does not extend to communications between an agency employee and an outside individual, or to materials created by an outside individual.  See 5 U.S.C. § 552(b) (5); Dep't of the Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 2, 121 S. Ct. 1060, 1062 (2001) (for a document to qualify under Exemption 5, "its source must be a Government agency").

The Supreme Court has defined the term "agency" as "each authority of the Government . . . and includes entities such as Executive branch departments, military departments, Government corporations, Government-controlled corporations, and independent regulatory agencies." Id.  Applying this definition, "communications between agencies and outside parties are not protected under Exemption 5." Ctr. for Int'l Envtl. Law v. Office of the U.S. Trade Representative, 237 F. Supp. 2d 17, 25 (D.D.C. 2002); see also Brownstein Zeidman

---

[4]   To the extent that the Court can not conclusively determine the applicability of Exemption 5 to any of the redacted documents on the Vaughn Index, Plaintiffs respectfully request that the Court conduct an in camera review of all of NPS's withholdings. See Section III, infra.

& Schomer v. Dep't of the Air Force, 781 F. Supp. 31, 35 (D.D.C. 1991) (negotiations between a government agency and outside parties are not protected under Exemption 5).

Furthermore, even if a document meets the pre-decisional and deliberative requirements, once a document is shared outside of an agency, it no longer is exempt from disclosure. See Center for Int'l Envtl. Law, 237 F. Supp. 2d at 31 (documents that do not qualify as inter-agency or intra-agency are not protected from disclosure by Exemption 5, regardless of whether or not the documents are predecisional or deliberative); Mead Data Cent. v. U.S. Dep't of Air Force, 566 F.2d 242, 257 (D.C. Cir. 1977) (deliberative information that is shared between an agency and an outside party is not exempt).

Despite the limited applicability of Exemption 5 to inter-agency or intra-agency communications, NPS has improperly extended Exemption 5 to communications by NPS employees with employees of independent news organizations such as the Associated Press, Cable News Network ("CNN") and the National Broadcast Center ("NBC"), the University of California Los Angeles ("UCLA") and the National Archives & Records Administration.[5] NPS also has erroneously applied Exemption 5 to various lists and descriptions of news footage prepared by one of these outside sources.[6] Because Exemption 5 does not cover such materials, the Court should order that all be released to Plaintiffs.

---

[5] Entries 18, 22, 25, 27, 31, 33 to 38, 44, 71, 83, 93, 97, 100 and 101 on the Vaughn Index fall within this grouping.

[6] Entries 27, 28, 30, 31, 38, 41, 44, 69, 70, 93 to 101 and 105 on the Vaughn Index fall within this grouping.

C.    Identities of Certain Historians Can Not Be Withheld Under Exemption 5

NPS also has erroneously withheld pursuant to Exemption 5 the names of certain scholars, categorized as members of either the Abraham Lincoln Bicentennial Commission or its advisory committee and listed in an e-mail message at entry 72 on the Vaughn Index.[7]

Even if NPS had hired these historians as expert consultants (which it has not), NPS may not withhold their identities under Exemption 5. See Ass'n of Nat'l Advertisers, Inc. v. FTC, 1976 WL 1294 (D.D.C. July 15, 1976) (names and addresses of outside expert consultants ordered disclosed). The identities of these historians constitute factual information that is not exempt from disclosure. See Mapother v. Dep't of Justice, 3 F.3d 1533, 1537 (D.C. Cir. 1993) ("factual material must be disclosed"). In fact, this list of names neither makes recommendations nor expresses a legal or policy opinion, as required by Exemption 5. See Vaughn v. Rosen, 523 F.2d 1136, 1144 (D.C. Cir. 1975) (material withheld under Exemption 5 "must be a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters"). Accordingly, the Court should direct NPS to provide the names redacted from this e-mail.

D.    Communications Sent to Congress Are Not Protected Under Exemption 5

Finally, Plaintiffs seek the production of entry 80 on the Vaughn Index, which NPS identifies as an e-mail message sent to Representative Eleanor Holmes-Norton. Faced with a similar withholding, the Court of Appeals for the District of Columbia Circuit has held that a

[7]    By way of background, the Abraham Lincoln Bicentennial Commission (the "Commission") was established to plan for the Abraham Lincoln's 200th birthday celebration in 2009. The Commission was appointed by the President, the Senate and the House of Representatives following the passage of the Abraham Lincoln Bicentennial Commission Act in 2000 (Public Law No: 106-173). The Commission and its advisory committee are comprised of historians, authors, collectors, elected officials and others "who share the goal of preserving the legacy of Abraham Lincoln." The identities of all are included on the Commission's website at http://www.lincolnbicentennial.gov/index.php.

letter to Congress cannot be withheld under Exemption 5 "because Congress is simply not an agency." Dow Jones & Co. v. Dep't of Justice, 917 F.2d 571, 574 (D.C. Cir. 1990). Representative Norton, as a member of Congress, does not meet the intra-agency criteria set forth by the Supreme Court.  Accordingly, the Court should compel NPS to produce this document in its entirety to Plaintiffs.

II.    NPS HAS IMPROPERLY CONSTRUED EXEMPTION 6
       TO INCLUDE DETAILS OF PUBLIC COMPLAINTS

        After news of NPS's intended revisions to the Video became public, NPS received a barrage of letters and e-mail messages as a result of organized letter writing campaigns from members of the public concerning proposed changes.  Despite the inherently public nature of these e-mail messages, NPS has asserted Exemption 6 to withhold the names and contact information for the authors, as well as select statements contained in individual e-mail messages. Exemption 6 does not apply to any of these documents, and all e-mail messages from members of the public should be produced to Plaintiffs without redactions.

        Exemption 6 permits an agency to withhold only "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b) (6).  Thus, to be withheld under Exemption 6, a document must be (1) contained in a personnel, medical or "similar" file and (2) of such a nature that its disclosure be "a clearly unwarranted invasion of personal privacy."  See U.S. Dep't of State v. Washington Post Co., 456 U.S. 595, 598, 102 S. Ct. 1957, 1959 (1982) (applying Exemption 6).

        As the Supreme Court held in U.S. Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 109 S. Ct. 1468 (1989), although information may be withheld pursuant to Exemption 6 to protect against the unwarranted invasion of personal

privacy, "[t]he term 'unwarranted' requires . . . balanc[ing] the . . . privacy interest against the public interest in disclosure." Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 171, 124 S. Ct. 1570, 1580 (2004) (citing Reporters Committee, 489 U.S. at 762, 109 S. Ct. at 1480-481).[8] This court has recognized the considerable public interest in "identifying the actors who are able to exert influence on the pardon application and selection process." Lardner v. U.S. Dep't of Justice, 2005 WL 758267, at *18 (D.D.C. Mar. 31, 2005); see also Judicial Watch of Fl., Inc. v. U.S. Dep't of Justice, 102 F. Supp. 2d 6, 18 (D.D.C. 2000) ("Depriving the public of knowledge of the writer's identity would deprive the public of a fact which could suggest that their Justice Department had been steered by political pressure rather than by the relevant facts and law.").

Alliance for Wild Rockies v. Department of the Interior, 53 F. Supp. 2d 32 (D.D.C. 1999), is particularly instructive. In that case, plaintiffs sought the disclosure of the names and addresses of the individuals that had submitted written comments to defendants in response to a notice of proposed rulemaking. Id. at 33. The court reasoned that although an individual may have a privacy interest in his name and address, the commenting individuals had acted voluntarily and without the expectation of privacy. Id. at 33. Accordingly, it rejected the notion that disclosure "would result in a clearly unwarranted invasion of personal privacy" and ordered Defendants to disclose unredacted copies of the submissions. Id. at 34; see also Landmark Legal Found v. I.R.S., 87. F. Supp. 2d 21, 27 (D.D.C. 2000) (finding no privacy interest under Exemption 6 in the identity of individuals who wrote letters to the IRS regarding an investigation

---

[8] Although Reporters Committee dealt with the balancing test required for a 5 U.S.C. § 552(b)(7)(C) exemption, the Supreme Court in U.S. Department of State v. Ray, 502 U.S. 164, 112 S. Ct. 541 (1991), made clear that Reporters Committee decision applies equally in the Exemption 6 context.

of tax-exempt organizations); compare Nat'l Ass'n of Retired Fed. Employees v. Horner, 879

F.2d 873, 876 (D.C. Cir. 1989) (declining to release names and home addresses of retired or

disabled federal employees receiving monthly government annuity payments where the court

feared that the individuals would subsequently be subjected to personal solicitations); Gannet

Satellite Info. Network, Inc. v. U.S. Dep't of Education, 1990 WL 251480 (D.D.C. Dec. 21,

1990) (denying release of list of names of individuals who had defaulted on their student loans

based on sensitivity concerns).

  Just as in Alliance for Wild Rockies, NPS has applied Exemption 6 to withhold (1) the

names, addresses and other contact information for those individuals that sent comments to NPS

on potential changes to the Video and (2) certain concluding statements contained in these e-

mails.[9]  However, the voluntary submissions by concerned citizens do not represent the personal

information that Exemption 6 is designed to protect.  Any modest privacy interests in the

identities of individuals who wrote letters and e-mails regarding the video must be balanced

against the public interest in identifying actors who are able to exert influence on agency

decisions.  The considerable public interest in the requested information outweighs any potential

privacy interests, warranting disclosure.  Therefore, the Court should compel NPS to produce

complete copies of all e-mail messages sent by members of the public and all other withholdings

made pursuant to Exemption 6.

---

[9] These withholdings are listed at entries 11, 13, 14, 52 to 58, 73, 75, 91 and 107 on the Vaughn
Index.

III.    THE COURT SHOULD CONDUCT AN IN CAMERA
        REVIEW OF CERTAIN WITHHELD DOCUMENTS

"FOIA contemplates that courts will resolve fundamental issues in contested cases on the basis of in camera examinations of the relevant documents." Phillippi v. CIA, 546 F.2d 1009, 1012-13 (D.C. Cir. 1976); see also 5 U.S.C. § 552(a) (4) (B) (the court "may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the [FOIA] exemptions"). Thus, in instances when it is not readily apparent from a Vaughn index and accompanying affidavits whether certain withholdings are appropriate, a court may make specific findings as to which non-exempt, responsive materials should be segregated from exempt material. See Judicial Watch, v. U.S. Dep't of Health and Human Servs., 27 F. Supp. 2d 240, 246-47 (D.D.C. 1998) (conducting in camera review of all documents withheld pursuant to Exemption 5).

In Mead Data Cent. v. U.S. Dep't of Air Force, 566 F.2d 242 (D.C. Cir. 1977) , the District of Columbia Court of Appeals faced a dispute over whether the information sought was purely factual or deliberative and could be withheld under Exemption 5. The court noted:

> Where there is such a factual dispute over the nature of the information sought in a FOIA suit, the lack of access of the party seeking disclosure undercuts the traditional adversarial theory of judicial dispute resolution. Although in camera inspection of the disputed documents may compensate somewhat for this deficiency, it is a far from perfect substitute.

Id. at 250 (citations omitted) (noting the burden on an agency to provide "detailed justification[s]" of all withholdings).

Here, in total, Plaintiffs have identified 55 of the 107 entries on the Vaughn Index that contain facial inadequacies that mandate their production. Should the Court conclude that the Vaughn Index and Line Declaration contain insufficient detail to determine whether these and

18

other similarly situated withholdings were properly made, the Court should conduct an in camera

review of the subject documents to determine whether NPS has improperly redacted any exempt

or segregable materials from its production to Plaintiffs.[10]

IV.    THE COURT SHOULD DIRECT NPS TO SUPPLEMENT
       ITS INADEQUATE VAUGHN INDEX

        "An agency may meet [its] burden [of nondisclosure] by providing the requester with a

Vaughn index adequately describing each withheld document and explaining the exemption's

relevance." Defenders of Wildlife v. U.S. Dep't of Agriculture, 311 F. Supp. 2d 44, 53 (D.D.C.

2004). "A Vaughn index is an affidavit that indexes and specifically describes withheld or

redacted documents and explains why each withheld record is exempt from disclosure." Id.; see

also Edmonds Inst. v. U.S. Dept. of the Interior, 383 F. Supp. 2d 105, 107 (D.D.C. 2005) ("The

defendant must include in the Vaughn index a description of each document being withheld, and

an explanation for the reason for the agency's nondisclosure.") (citation omitted).

        Despite Plaintiffs' insistence, NPS has refused to confirm whether all responsive

documents have either been produced or appear on the Vaughn Index. The documents identified

on the Vaughn Index have, with the exceptions of entries 102 to 104 and 106, been produced in

redacted form, ignoring any documents that have been withheld in their entirety. Nor has NPS

---

[10] If the Court is not prepared to review the documents in camera at this time, Plaintiffs request that the Court order NPS to provide a more detailed Vaughn Index of all of its Exemption 5 withholdings. The existing Vaughn Index is replete with vague references designed to invoke the deliberative process privilege. (Davidson Decl., Ex. E) Rather than include sufficiently detailed descriptions, as required by FOIA, roughly 28 of the 51 Exemption 5 withholdings from communications (e-mails, letters, memos) similarly describe NPS employees' "perceived reaction," "preliminary reaction," "interpretation of reaction," "initial impressions and reactions" or some such synonymous phrase. In looking at the context of these redactions, however, it appears that NPS has used such blanket descriptions to withhold both purely factual statements and statements that do not relate to NPS decisions regarding changes to the September 2003 Video. Even if certain of these withholdings can not be extracted from rightfully exempt portions, NPS must provide Plaintiffs with adequate descriptions of the documents' content and to articulate the reasons justifying all withholdings.

responded to Plaintiffs' request that NPS identify any documents withheld in their entirety or, alternatively, for a representation that no such documents exist.  In so doing, NPS has failed to comply with its obligations.  Because of the inadequacies in the existing Vaughn Index, the Court should order NPS to provide a more detailed Vaughn Index setting forth all documents withheld, including those withheld in their entirety, or affirm that no additional documents exist.

## CONCLUSION

For the reasons set forth herein, Plaintiffs People For the American Way Foundation and Public Employees for Environmental Responsibility respectfully request the Court grant the instant motion to compel production of the withheld documents in their entirety and any other relief the Court deems just and proper.

Dated: New York, New York
      November 18, 2005

                    DLA PIPER RUDNICK GRAY CARY US LLP

                    By: _____/s/ Stephen P. Davidson_____
                          Stephen P. Davidson (admitted pro hac vice)
                          Stephanie K. Vogel (admitted pro hac vice)
                          Sara Z. Moghadam (D.C. Bar No.  463862)

                    1251 Avenue of the Americas
                    New York, New York  10020
                    (212) 835-6000

                    1200 Nineteenth Street, N.W.
                    Washington, D.C.  20036-2412
                    (202) 861-3900

                    Counsel for Plaintiffs