**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| )<br>PEOPLE FOR THE AMERICAN WAY )<br>FOUNDATION, *et al.*, )<br> )<br>            Plaintiffs, )<br> )<br>            v. )<br> )<br>NATIONAL PARK SERVICE, )<br> )<br>            Defendant. )<br> ) | Civil Action No. 05-152 (EGS) |

**MEMORANDUM OPINION**

Plaintiffs People for the American Way Foundation ("PFAWF") and Public Employees for Environmental Responsibility ("PEER") filed a complaint pursuant to the Freedom of Information Act ("FOIA"), seeking to enjoin defendant National Park Service ("NPS") from withholding agency records. Specifically, plaintiffs seek records with regard to defendant's alleged plans to alter an eight-minute video for public viewing at the Lincoln Memorial which contains, among other things, photographs and video coverage of gay rights, pro-choice, and anti-Vietnam War demonstrations. Plaintiffs allege that defendant undertook plans to alter the video following complaints from conservative supporters about the gay rights, pro-choice, and anti-war footage. In response to plaintiffs' complaint, defendant produced agency records and a *Vaughn* Index listing the materials it withheld from production pursuant to FOIA Exemptions 2, 5, and 6. Plaintiffs then filed a motion to compel production of

materials withheld under Exemptions 5 and 6.  Defendant in turn
filed a motion for summary judgment arguing that it had
discharged all of its obligations under FOIA and that it properly
withheld materials pursuant to Exemptions 2, 5, and 6.  Pending
before the Court are plaintiffs' motion to compel and defendant's
motion for summary judgment.  Upon consideration of the motions,
the responses and replies thereto, the applicable law, and the
entire record, the Court **GRANTS in part and DENIES in part**
plaintiffs' motion to compel, and the Court **GRANTS in part and
DENIES in part** defendant's motion for summary judgment.

### BACKGROUND

This case originates from defendant NPS's alleged plans to
alter an eight-minute informational video shown at the Lincoln
Memorial since 1994.  As of September 2003, the video contained
photographs and video coverage of demonstrations that occurred at
the Lincoln Memorial, including gay rights, pro-choice and anti-
Vietnam War footage.  According to media reports, defendant
undertook plans to alter the video in response to complaints from
conservative supporters opposing the gay rights, pro-choice, and
anti-war footage.

On October 30, 2003, plaintiffs PFAWF and PEER submitted a
FOIA request to defendant seeking:

> (1) "An exact copy of any video . . . that was
> displayed for public viewing in the Lincoln Memorial
> Visitor Center on September 1, 2003";

(2) "An exact copy of any and all other videos . . . that were created for use and public viewing in the Lincoln Memorial Visitor Center after September 1, 2003";

(3) "Any and all documents which refer, reflect or relate to the content of any video that was displayed for public viewing in the Lincoln Memorial Visitor Center on September 1, 2003, including all such documents created prior to that date"; and

(4) "Any and all documents which refer, reflect or relate to any modification, alteration, cessation or change of the video . . . including any and all internal memorandums, notes, emails, or other documentation responsive to this request."

October 30, 2003 FOIA Request ("Request Letter"), Ex. B to Davidson Decl.; Def.'s Statement of Material Facts ¶ 1.  In response to plaintiffs' Request Letter, defendant sent a letter to plaintiffs on January 16, 2004, enclosing a copy of the September 2003 video in addition to "assorted media reports on the issue."  Jan. 16, 2004 NPS Response ("Response Letter") at 1, Ex. C to Davidson Decl.; Def.'s Statement of Material Facts ¶ 2. This Response Letter confirmed that defendant was developing a revised video for public viewing at the Lincoln Memorial. However, the letter also asserted that defendant was unable to locate any documents "that relate to the content of the September 1, 2003 video," and further asserted that "all internal documents" "which relate to the modification of the September 1, 2003 video . . . [were] being withheld . . . under exemption 5." Response Letter at 1.

On January 28, 2004, plaintiffs timely appealed defendant's withholdings described in the Response Letter. Jan. 28, 2004 Appeal ("Appeal Letter"), Ex. D to Davidson Decl. Defendant did not respond within the twenty-day time limit imposed by FOIA. Accordingly, on January 21, 2005, plaintiffs filed their complaint in this Court.

Plaintiffs' complaint states that defendant's conduct in this case "is arbitrary and capricious and amounts to a constructive denial of [p]laintiffs' FOIA request." Compl. ¶ 4. Accordingly, plaintiffs request that this Court: (1) "[e]nter an [o]rder declaring that [defendant] has wrongfully withheld requested agency records"; (2) "[i]ssue a permanent injunction directing . . . [defendant] to disclose to . . . [p]laintiffs all requested documents"; (3) "[m]aintain jurisdiction over this action until [defendant] is in compliance with FOIA and every order of this Court"; (4) "[a]ward [p]laintiffs their attorney fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E)"; and (5) "[g]rant such additional and further relief as to which [p]laintiffs may be entitled." Compl. at 8. In addition to the FOIA claim, plaintiffs allege that defendant has violated the Administrative Procedure Act ("APA") because defendant's failure to disclose responsive documents constitutes agency action unlawfully withheld and unreasonably delayed.

4

In response to plaintiffs' complaint, defendant produced a first set of agency records on May 6, 2005.  Plaintiffs questioned the completeness of this production, and defendant then supplemented its production to provide copies of certain documents that were previously redacted.  On July 20, 2005, defendant released additional records containing 4,945 electronic communications, redacting names and contact information, and additional records.  Defendant also provided plaintiffs with a *Vaughn* Index identifying all responsive records and explaining the basis for any withholdings.  Plaintiffs assert that defendant only released this second set of records after plaintiffs provided defendant with information concerning public e-mails objecting to changes to the September 2003 video.

Subsequently, on September 6, 2005, defendant submitted a revised *Vaughn* Index to plaintiffs along with a redacted set of the indexed records.  This revised *Vaughn* Index includes a fourteen-page preamble explaining the general basis for defendant's withholdings, descriptions of the records indexed, and an Appendix containing a list of names and acronyms.  Defendant also provided plaintiffs with a declaration executed by William Line ["Line Declaration"], defendant's Communications, FOIA and Tourism Officer.

The Line Declaration asserts that in response to plaintiffs' FOIA request and under Mr. Line's guidance,

5

NPS employees searched agency records, both manually
and by automated means, for the purpose of locating
responsive records.  During this search over one
hundred people looked for responsive documents in both
their personal electronic files and the following
locations: the National Mall & Memorial Parks offices,
the National Capital Region Offices of the NPS, the
NPS's D.C. Administrative Support Office ("WASO"), NPS
Offices in the Department's headquarters, the Ranger
Station on the National Mall (also know [sic] as the
Survey Lodge), the Department's Communications Office,
NPS's Harpers Ferry Center, and NPS's Denver Service
Center.  This search was conducted in good faith and
was reasonably calculated to uncover all relevant
documents.

Line Decl. ¶ 3, Ex. F to Davison Decl.; Def.'s Statement of

Material Facts ¶¶ 9-11.[1]  The Line Declaration further asserts

that Mr. Line "worked with the Department's attorneys to create a

*Vaughn* Index for this case . . . [Mr. Line] reviewed each of the

documents included in the *Vaughn* Index . . . [and] conducted a

thorough and careful segregability analysis."  Line Decl. ¶ 5.

The *Vaughn* Index "groups similar categories, or multiple pages,

of records into discrete 'documents' where it made logical sense

(for example, Document 81 contains two parts: an e-mail and the

attachment accompanying the e-mail).  Under these groupings, the

---

[1] Although plaintiffs do not contest that defendant's
employees searched agency records, they contend that they have no
information to base a response to the stated "good faith" and
"reasonably calculated" nature of defendant's search, and
accordingly, dispute defendant's assertion.  Pls.' Response to
Def.'s Statement of Material Facts ¶ 11.  However, as will be
discussed in Section I of the Analysis, agency affidavits and
declarations are accorded a presumption of good faith which
cannot be rebutted by mere speculation.  *See SafeCard Servs.,
Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citations and
quotations omitted).

*Vaughn* Index contains 107 documents.  Of those documents, 102

were released in part, and five were withheld in full."  Def.'s

Statement of Material Facts ¶ 12.  The Line Declaration explains

that

> [r]easonably segregable factual material has been
> released from all of the documents included in the
> *Vaughn* Index wherever possible, unless such factual
> information is inextricably intertwined with
> deliberative communications, or where the document's
> drafter's selection of what factual material to include
> in the document would reveal the nature of the
> deliberative communication.  This segregability
> analysis is discussed in further detail within the
> *Vaughn* Index's document descriptions, where partial
> releases are specifically noted.

Line Decl. ¶ 6.[2]

Defendant is withholding documents pursuant to FOIA

Exemptions 2, 5, and 6.  Plaintiffs do not contest the Exemption

2 withholdings.  However, plaintiffs do contest defendant's

withholdings pursuant to Exemptions 5 and 6.[3]  On November 18,

---

[2] Although plaintiffs do not contest that defendant produced
a *Vaughn* Index, they contend that they have no information to
base a response to defendant's assertion that defendant's search
was adequate and that defendant has produced all reasonably
segregable material.  Pls.' Response to Def.'s Statement of
Material Facts ¶13.  Accordingly, plaintiffs' dispute defendant's
assertion.  *Id.*

[3] Defendant asserts that on January 11, 2006, defendant made
an additional release of records to plaintiffs, and that this
release leaves only the following records at issue in this case:
(Exemption 5 withholdings) 2, 5, 9, 10, 12, 27, 30, 33-35, 37,
41, 48, 49, 63, 65, 69, 77, 78, 81, 86, and 93; (Exemption 6
withholdings) 11, 13, 14, 52-58, 73, 75, 91, and 107.  Def.'s
Statement of Material Facts ¶¶ 25-26.  Plaintiffs respond that
the documents listed by defendant are "representative of examples
of withholdings improperly made under Exemption 5 and not an

2005, plaintiffs filed a Motion to Compel requesting that the
Court order the production of withheld documents in their
entirety, or if the Court deemed it necessary, to review
documents *in camera* prior to making its decision.  Further,
plaintiffs requested that the Court order defendant to
"supplement its inadequate *Vaughn* Index."  Pls.' Motion to Compel
at 19.  In response, on January 13, 2006, defendant filed a
Motion for Summary Judgment contending that defendant fulfilled
all of its obligations under FOIA and that all of the
withholdings pursuant to Exemptions 5 and 6 were proper.
Further, defendant contends that plaintiffs' APA claim should be
dismissed because the APA does not create a cause of action
separate from FOIA for noncompliance with FOIA's terms.  On March
7, 2006, plaintiffs filed their Statement of Points and
Authorities in Further Support of Plaintiffs' Motion to Compel
and in Opposition to Defendant's Motion for Summary Judgment.

## ANALYSIS

I.  **Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56, summary
judgment should be granted only if the moving party has shown

---

exhaustive list," and further assert that "[p]laintiffs contest
all withholdings made pursuant to Exemption 6."  Pls.' Response
to Def.'s Statement of Material Facts ¶¶ 25-26.  However, as
discussed in full in Section II.D of the Analysis, plaintiffs do
not make clear which Exemption 5 documents are still at issue in
this case following defendant's additional release of records.

that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).  In determining whether a genuine issue of material fact exists, the Court must view all facts in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In a FOIA case, an agency is entitled to summary judgment "if the agency proves that it has fully discharged its obligations under the FOIA."  *Greenberg v. U.S. Dep't of Treasury*, 10 F. Supp. 2d 3, 11 (D.D.C. 1998).  Accordingly, an agency must show beyond material doubt "that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  Further, an agency "bears [the] burden of demonstrating that . . . all information that falls within the class requested either has been produced, is unidentifiable, or is exempt from disclosure."  *Cole v. U.S. Dep't of Justice*, 2006 WL 2792681, at *1 (D.D.C. Sept. 27, 2006) (citing *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001)).

The Court may award summary judgment based solely on the information provided in affidavits or declarations if they: (1) "describe the documents and justification for nondisclosure with reasonably specific detail"; (2) "demonstrate that the information withheld logically falls within the claimed exemption"; and (3) "are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Judicial Watch v. Dep't of Army*, 466 F. Supp. 2d 112, 119 (D.D.C. 2006) (citing *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).  Agency affidavits and declarations "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents," *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citations and quotations omitted), and the Court must "accord substantial weight" to agency affidavits regarding FOIA exemptions, 5 U.S.C. § 552(a)(4)(B); *see also Elec. Privacy Info. Ctr. v. Trans. Security Admin.*, 2006 WL 626925, at *6 (D.D.C. Mar. 12, 2006).  The Court's review of an agency's denial of a FOIA request is *de novo*, *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 74 (D.D.C. 2007) (citing 5 U.S.C. § 552(a)(4)(B)), and the agency "bears the burden of establishing the applicability of the claimed exemption," *Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003).

## II.  FOIA

Congress enacted FOIA to "open[] up the workings of government to public scrutiny through the disclosure of government records."  *Stern v. FBI*, 737 F.2d 84, 88 (D.C. Cir. 1984) (citations and quotations omitted).  Although FOIA is aimed toward "open[ness] . . . of government," *id.*, Congress acknowledged that "legitimate governmental and private interests could be harmed by release of certain types of information." *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (citations and quotations omitted).  As such, pursuant to FOIA's nine exemptions, an agency may withhold requested information.  5 U.S.C. § 552(a)(4)(B) & (b)(1)-(9).  However, "[b]ecause FOIA establishes a strong presumption in favor of disclosure . . . requested material must be disclosed unless it falls squarely within one of the nine exemptions carved out in the Act."  *Burka v. U.S. Dep't of Health and Human Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996).

In this case, plaintiffs challenge the adequacy of defendant's search, defendant's segregability analysis, and the conclusory nature of defendant's *Vaughn* index.  Plaintiffs also contend that defendant's withholdings pursuant to Exemptions 5 and 6 are improper.  Accordingly, plaintiffs move the Court to either compel production of these documents or order *in camera* review or discovery to determine whether these documents should

11

be produced and whether defendant has adequately discharged its
FOIA obligations.

A.   **Inadequate Search**

To prevail on a motion for summary judgment in a FOIA case,
an agency must show "beyond material doubt . . . that it has
conducted a search reasonably calculated to uncover all relevant
documents." *Weisberg v. U.S. Dep't of Justice* ("*Weisberg II*"),
705 F.2d 1344, 1351 (D.C. Cir. 1983); *see also Oglesby*, 920 F.2d
at 68.  With regard to the adequacy of an agency's search, "[t]he
issue is not whether any further documents might conceivably
exist but rather whether the government's search for responsive
documents was adequate." *Weisberg II*, 705 F.2d at 1351
(citations and quotations omitted).  The adequacy of an agency's
search is measured by a "standard of reasonableness," and is
"dependent upon the circumstances of the case." *Id.*  An agency
may rely upon affidavits and declarations to establish the
adequacy of its search, however, the affidavits and declarations
must be "'relatively detailed' and nonconclusory and . . .
submitted in good faith." *Id*.

Because the adequacy of an agency's search is "dependent
upon the circumstances of the case," *Weisberg II*, 705 F.2d at
1351, there is no uniform standard for sufficiently detailed and
nonconclusory affidavits.  The D.C. Circuit has noted that
generally an agency need not "set forth with meticulous

documentation the details of an epic search for the requested records." *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982) (holding that although descriptions of searches could have been more detailed, the district court did not err in granting summary judgment to the agency because arguable inadequacy of description was no more than marginal).  Accordingly, "[a]ffidavits that include search methods, locations of specific files searched, descriptions of searches of all files likely to contain responsive documents, and names of agency personnel conducting the search are considered sufficient." *Ferranti v. ATF*, 177 F. Supp. 2d 41, 47 (D.D.C. 2001) (citing *Weisberg II*, 705 F.2d at 1348)).  On the contrary, affidavits that "do not denote which files were searched or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [the plaintiff] to challenge the procedures utilized," have been held to be inadequate and too conclusory to justify a grant of summary judgment." *Santos v. Drug Enforcement Agency*, 357 F. Supp. 2d 33, 37 (D.D.C. 2004) (quoting *Weisberg v. U.S. Dep't of Justice* ("*Weisberg I*"), 627 F.2d 365, 371 (D.C. Cir. 1980)).  In determining the adequacy of an affidavit with regard to an agency search, federal courts have placed emphasis on whether an agency provides information about the search terms used and the specific files searched for each request. *See Maydak v. U.S. Dep't of Justice*, 362 F. Supp. 2d

316, 326 (D.D.C. 2005) (holding agency search inadequate because agency declaration provided no information about search terms or scope of files searched); *see also Nation Magazine v. U.S. Customs Service*, 71 F.3d 885, 890 (D.C. Cir. 1995) (noting agency affidavits submitted in support of an adequate search "must be reasonably detailed . . ., setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched") (citations and quotations omitted).

On September 6, 2005, defendant submitted to plaintiffs a declaration executed by William Line, defendant's Communications, FOIA and Tourism Officer.  Mr. Line's declaration provides in relevant part that under his guidance

> NPS employees searched agency records, both manually and by automated means, for the purpose of locating responsive records.  During this search, over one hundred people looked for responsive documents in both their personal electronic files and the following locations: the National Mall & Memorial Parks offices, the National Capital Region Offices of the NPS, the NPS's D.C. Administrative Support Office ("WASO"), NPS Offices in the Department's headquarters, the Ranger Station on the National Mall (also know [sic] as the Survey Lodge), the Department's Communications Office, NPS's Harpers Ferry Center, and NPS's Denver Service Center.  This search was conducted in good faith and was reasonably calculated to uncover all relevant documents.

Line Decl. ¶ 3.  Defendant asserts that the search for responsive documents "uncovered over 5000 responsive pages of documents and several videotapes," and that the Line Declaration "demonstrates

through detailed, non-conclusory and good faith averments that," in this case," defendant performed a sufficiently reasonable search for purposes of its FOIA obligations.

Although "meticulous detail" is generally unnecessary when describing the nature of a FOIA search, *Perry*, 684 F.2d at 127, in this case, defendant, through the Line Declaration, has neither identified what search terms were used, nor has it identified why the scope of defendant's search was limited to the files or personnel listed.  Moreover, the number of responsive documents produced in this case does not mean that the search was adequate.  The Court generally does not measure the adequacy of a FOIA search "by the fruits of the search, but [rather] by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).  Accordingly, because the Court finds that defendant has not established "beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents," *Weisberg II*, 705 F.2d at 1351, the Court **DENIES** defendant's motion for summary judgment with regard to the adequacy of its search.

### B.  Adequate *Vaughn* Index

Plaintiffs argue that defendant's *Vaughn* index inadequately describes the documents for which exemptions are claimed.  "To be adequate, a *Vaughn* Index . . . 'must adequately describe each

withheld document or deletion from a released document,' and
. . . 'must state the exemption claimed for each deletion or
withheld document, and explain why the exemption is relevant.'"
*Dorsett v. U.S. Dep't of the Treasury*, 307 F. Supp. 2d 28, 34
(D.D.C. 2004) (quoting *Founding Church of Scientology v. Bell*,
603 F.3d 945, 949 (D.C. Cir. 1979)).  The *Vaughn* index must
provide "as much information as possible without thwarting the
[asserted] exemption's purpose."  *King v. U.S. Dep't of Justice*,
830 F.2d 210, 224-25 (D.C. Cir. 1987); *see also Founding Church
of Scientology*, 603 F.2d at 949; ("[T]he explanation of the
exemption claim and descriptions of withheld material need not be
so detailed as to reveal that which the agency wishes to conceal,
but they must be sufficiently specific to permit a reasoned
judgment as to whether the material is actually exempt under
FOIA.").  Accordingly, the Court will not accept "conclusory and
generalized allegations of exemptions," and instead requires "a
relatively detailed analysis in manageable segments."  *Vaughn v.
Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973).

The adequacy of a *Vaughn* Index is not defined by its form,
but rather its substance.  *See King*, 830 F.2d at 225 ("The
measure of a *Vaughn* index is its descriptive accuracy, and we are
willing to accept innovations in form so long, but only so long,
as they contribute to that end.")  As such, a *Vaughn* Index is not
expected to be "a work of literature," and "agencies are not

graded on the richness or evocativeness of their vocabularies," *Landmark Legal Found. v. IRS*, 267 F.3d 1132, 1138 (D.C. Cir. 2001), nor on the length of their document descriptions, *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006).  Instead, the relevant inquiry for the Court's analysis of an adequate *Vaughn* Index is whether the index "provide[s] a relatively detailed justification, specifically identif[ies] the reasons why a particular exemption is relevant and correlat[es] those claims with the particular part of a withheld document to which they apply."  *Id.* (citations and quotations omitted).  Although the need for relatively detailed justifications applies to the entire *Vaughn* Index, the need for a detailed description "is of particular importance . . . where the agency is claiming that the documents are protected by the deliberative process privilege under Exemption 5."  *Edmonds Inst.*, 383 F. Supp. 2d at 108 n.1; *see also Animal Legal Def. Fund, Inc. v. Dep't of the Air Force*, 44 F. Supp. 2d 295, 299 (D.D.C. 1999) ("The need to describe each withheld document when Exemption 5 is at issue is particularly acute because 'the deliberative process privilege is so dependent upon the individual document and the role it plays in the administrative process.'" (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980))).

Defendant contends that its *Vaughn* Index is legally sufficient because the *Vaughn* index describes the type of each

document, the total number of pages, the subject matter, and, if applicable, the creator and recipient of each document. Defendant further asserts that the *Vaughn* Index contains "specific description[s] of each record, including what, if anything, was withheld and the basis for the withholding, if any." Def.'s Mem. in Supp. at 6-7.  Plaintiffs counter that defendant has not met its summary judgment burden with regard to the *Vaughn* Index because the index is "replete with conclusory descriptions such as 'perceived reaction,' 'interpretation of reaction,' and 'initial impressions and reactions' that do not establish the corresponding withholdings as deliberative in character."  Pls.' Opp'n at 7.

Typical entries in defendant's *Vaughn* Index are as follows: "[Document 12 Description:] This email was redacted in part and describes initial thoughts and reaction to the Lincoln Memorial videotape description from the CNS story in this same e-mail. The redacted portions speculate and describe perceived reactions to the story,"  *Vaughn* Index at 25, Ex. E to Davidson Decl.; "[Document 41 Description:] *E-mail #2* has been released.  A suggested footage list has been redacted from *E-mail #1.* Redacted portions of *E-mail #3* include opinions on the on-going progress of the video project," *id.* at 44.  The Court finds that these descriptions are not too conclusory and instead provide for a sufficiently adequate *Vaughn* Index.  *See Edmonds Inst.*, 383 F.

Supp. 2d at 109 n.4 (finding that the following description would be adequate: "[T]he document identified as *Vaughn* index No. 52, sent to the team drafting the EIS, provides section-by-section comments to a draft of the Benefits-Sharing EIS").  Defendant's *Vaughn* Index provides descriptions with similar detail to the *Edmonds Institute* example and provides sufficient information for the Court to decide whether a FOIA exemption should apply. Accordingly, because the Court finds that defendant's *Vaughn* Index is sufficiently detailed and provides an adequate basis for determining whether an exemption applies, the Court **GRANTS** defendant's motion for summary judgment with regard to the adequacy of its *Vaughn* Index.

### C.   Adequate Segregability Analysis

The D.C. Circuit has been clear that "[a] district court that 'simply approve[s] the withholding of an entire document without entering a finding on segregability, or lack thereof,' errs."  *Krikorian v. Dep't of State*, 984 F.2d 461, 467 (D.C. Cir. 1993) (citations omitted); *see also Elec. Privacy Info. Ctr.*, 2006 WL 626925, at *6 (explaining "district courts are required to consider segregability issues even when the parties have not specifically raised such claims" (citing *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999))).  Accordingly, with regard to any document an agency believes falls under a FOIA exemption, the agency is required to

19

"undertake a 'segregability analysis,' in which it separates the exempt from the non-exempt portions of the document, and produces the relevant non-exempt information." *Edmonds Inst.*, 383 F. Supp. 2d at 108; *see also Vaughn*, 484 F.2d at 825 ("[A]n entire document is not exempt merely because an isolated portion need not be disclosed.  Thus, the agency may not sweep a document under a general allegation of exemption, even if that general allegation is correct with regard to part of the information.").

An agency's *Vaughn* Index "should contain a description of the segregability analysis explaining 'in detail which portions of the document are disclosable and which are allegedly exempt.'" *Edmonds Inst.*, 383 F. Supp. 2d at 108 (quoting *Vaughn*, 484 F.2d at 827).  Although an agency must provide a "detailed justification" for non-segregability, a line by line examination of the allegedly exempt material is "neither necessary nor dispositive." *Elec. Privacy Info. Ctr.*, 2006 WL 626925, at *6 (explaining that a plain reading of *Johnson v. Executive Office for the U.S. Attorneys*, 310 F.3d 771 (D.C. Cir. 2002), indicates that the D.C. Circuit "considered a declarant's representation that a 'line-by-line' review was conducted to be a persuasive factor, but by no means determinative or required").  An agency may use its *Vaughn* Index in conjunction with its agency declaration to satisfy its segregability analysis burden.  See *Peter S. Herrick's Customs and Int'l Trade Letter v. U.S. Customs*

20

*and Border Protection*, 2005 WL 3274073, at * 3 (D.D.C. Sept. 22, 2005).

When viewing the Line declaration and *Vaughn* index together, the Court finds that defendant's segregability analysis was legally sufficient.  The Line Declaration states,

> [r]easonably segregable factual material has been released from all of the documents included in the *Vaughn* Index wherever possible, unless such factual information is inextricably intertwined with deliberative communications, or where the document's drafter's selection of what factual material to include in the document would reveal the nature of the deliberative communication.  This segregability analysis is discussed in further detail within the *Vaughn* Index's document descriptions, where partial releases are specifically noted.

Line Decl. ¶ 6.  If this statement were the limit of defendant's segregability analysis, it would be "patently insufficient."  *See Animal Legal Def. Fund, Inc.,* 44 F. Supp. 2d at 302 (holding declaration stating solely that no withheld document was "reasonably segregable because it was so intertwined with protected material that segregation was not possible or its release would have revealed the underlying protected material" was conclusory and "patently insufficient").  However, as the Line Declaration states, defendant's segregability analysis is further described with regard to each withheld document in the *Vaughn* Index.  As a typical example of defendant's segregability analysis in its *Vaughn* Index, with regard to document 48, defendant states, "*E-mails #1* and #3 have been released.

21

Redacted portions of *E-mail #2* describe initial reactions to and
perceived, possible interest in news coverage by Fox News on the
Lincoln Video." *Vaughn* Index at 49.   Further, defendant's *Vaughn*
Index provides category descriptions with regard to relevant
exempt documents (or portions thereof) and in these descriptions
provide sufficiently detailed justifications for the
applicability of FOIA exemptions. *See id.* at 8-14.   In effect,
with both the Line Declaration and the *Vaughn* Index, defendant
asserts that all reasonably segregable material was produced, and
then goes on to provide sufficiently detailed justifications for
the non-segregability of each withholding.   Accordingly, because
of the "substantial weight" given to agency declarations, 5
U.S.C. § 552(a)(4)(B), and because of the individual descriptions
of each document and category descriptions of each applicable
FOIA exemption provided in the *Vaughn* Index, this Court **GRANTS**
defendant's motion for summary judgment with regard to the
adequacy of its segregability analysis.

   D.   **Exemption 5 Withholdings**

   Exemption 5 allows an agency to withhold "inter-agency or
intra-agency memorandums or letters which would not be available
by law to a party other than an agency in litigation with the
agency."   5 U.S.C. § 552(b)(5).   Exemption 5 covers inter-agency
or intra-agency documents "routinely . . . shielded from
discovery in private litigation because of the government's

'executive privilege,' which protects the 'deliberative or policymaking processes' of government agencies." *Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1194 (D.C. Cir. 1991) (citations omitted).  Exemption 5 covers "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Petroleum Info. Corp. v. U.S. Dep't of the Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992).  The purpose of Exemption 5 is to "encourage the 'frank discussion of legal and policy issues'" within the government, *Wolfe v. Dep't of Health and Human Servs.*, 839 F.2d 768, 773 (D.C. Cir. 1988), and "prevent injury to the quality of agency decisions," *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975).  Nonetheless, Exemption 5 "is to be construed as narrowly as consistent with efficient Government operations." *Petroleum Info. Corp.*, 976 F.2d at 1434 (citations and quotations omitted).

An agency bears the burden of demonstrating that requested material is properly withheld pursuant to an applicable exemption.  *Access Reports*, 926 F.2d at 1194; *see also Students Against Genocide*, 257 F.3d at 833.  An agency asserting the applicability of Exemption 5 with regard to the deliberative process privilege must show that the document is both "predecisional" and "deliberative."  *Access Reports*, 926 F.2d at 1194.  Further, an agency "must supply sufficient information so

that the Court 'can sensibly determine whether each invocation of
deliberative process privilege . . . is properly grounded."
*Lipsey v. U.S. Dep't of Justice Executive Office for United
States Attorneys*, 2007 WL 842956, at *3 (D.D.C. Mar. 19, 2007)
(quoting *Senate of the Commonwealth of Puerto Rico v. U.S. Dep't
of Justice Executive Office for U.S. Attorneys*, 823 F.2d 574, 584
(D.C. Cir. 1987)).

     A document is "predecisional" "if it was prepared in order
to assist an agency decisionmaker in arriving at his decision,
rather than to support a decision already made." *Petroleum Info.
Corp.*, 976 F.2d at 1434 (citations and quotations omitted).  A
"predecisional" determination is not affected by whether the
agency has subsequently made a final decision or simply decided
not to make a final decision.  *Fed. Open Mkt. v. Merrill*, 443
U.S. 340, 360 (1979); *Sears, Roebuck & Co.*, 421 U.S. at 151 n.18.
A document is "deliberative" "if it reflects the give-and-take of
the consultative process." *Petroleum Info. Corp.*, 976 F.2d at
1434 (citations and quotations omitted); *see also Florida House
of Representatives v. U.S. Dep't of Commerce*, 961 F.2d 941, 945
(11th Cir. 1992) (explaining that "deliberative" means "a direct
part of the deliberative process in that it makes recommendations
or expresses opinions on legal or policy matters" (citations and
quotations omitted)).  With regard to the deliberative
characteristic, the D.C. Circuit has focused its inquiry on

"whether disclosure of the requested material would tend to 'discourage candid discussion within an agency.'" *Petroleum Info. Corp.*, 976 F.2d at 1434 (citations omitted).  Accordingly, the deliberative process exemption is applicable to "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Sears*, *Roebuck & Co.*, 421 U.S. at 150. In contrast, the deliberative process exemption does not apply to "final statements of agency policy or statements explaining actions already taken by an agency." *Tax Analysts v. IRS*, 483 F. Supp. 2d 8, 13 (D.D.C. 2007).

Exemption 5 ordinarily covers "materials embodying officials' opinions," but "factual information generally must be disclosed." *Petroleum Info. Corp.*, 976 F.2d at 1434; *see also Quarles v. Dep't of the Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990) (explaining that "the prospect of disclosure is less likely to make an advisor omit or fudge raw facts, while it is quite likely to have just such an effect" on agency deliberations and opinions).  However, "[t]he fact/opinion distinction . . . is not always dispositive; in some instances, 'the disclosure of even purely factual material may so expose the deliberative process within an agency that the material is appropriately held privileged." *Petroleum Info. Corp.*, 976 F.2d at 1434. Accordingly, the D.C. Circuit has cautioned against the

categorical use of Exemption 5 with regard to "reflexive fact/opinion characterization." *Id.*  Instead, "[t]o fall within the deliberative process privilege, materials must bear on the formulation or exercise of agency policy-oriented *judgment*," and the key question to consider is "whether disclosure would tend to diminish candor within an agency." *Id.* (emphasis in original).

Alleging the applicability of Exemption 5, defendant contends that defendant's withholdings are both predecisional and deliberative.  Defendant claims that the withholdings are predecisional because there has been no final version of a new Lincoln Memorial video and that the withholdings are deliberative because they reflect the exchange of ideas and recommendations. Plaintiffs, on the contrary, argue that defendant has asserted Exemption 5 as a "blanket exemption," and has improperly used Exemption 5 to withhold "(1) purely factual statements, (2) statements that are not deliberative and (3) statements that appear not to involve pre-decisional communications regarding changes to the September 2003 Video."  Pls.' Mot. to Compel at 9.

Before addressing the merits of plaintiffs' and defendant's contentions with regard to Exemption 5, the Court notes that the parties have not made clear which Exemption 5 documents are still at issue in this case.  In plaintiffs' motion to compel, plaintiffs specifically argue that defendant has improperly applied Exemption 5 to: (1) factual material; (2) material that

is not inter- or intra- agency; (3) names of scholars; and (4)
communications sent to Congress.  *Id.* at 9-15.  Defendant then
filed its motion for summary judgment and statement of undisputed
facts, asserting that

> [s]ince [defendant] has released the contested portions
> of 18, 22, 25, 28, 31, 36, 38, 39, 44, 70, 71, 82, 94-101
> and 105, only the following records withheld in part
> pursuant to FOIA Exemption (b)(5) currently are at issue
> in this case: 2, 5, 9, 10, 12, 27, 30, 33-35, 37, 41, 48,
> 49, 63, 65, 69, 77, 78, 81, 86, 93.

Def.'s Statement of Undisputed Facts ¶ 25.  Plaintiffs respond
that the *Vaughn* Index entries referenced by defendant in
paragraph 25 "are representative examples of withholdings
improperly made under Exemption 5 and not an exhaustive list."
Pls.' Response to Def.'s Statement of Material Facts ¶ 25.
However, plaintiffs do not indicate which records are still at
issue considering defendant's disclosures.  In their motion to
compel and their opposition to defendant's motion for summary
judgment, plaintiffs specifically reference the following
documents, in addition to the records listed as at issue by
defendant, that have not yet been released by defendant: 3, 4,
45, 46, 67, 72, 79, and 80.[4]  Accordingly, even though plaintiffs

---

[4] Plaintiffs also request that the Court compel production
of documents 31, 71, and 101.  However, defendant released these
documents to plaintiffs in unredacted form on April 5, 2006.
Def.'s Notice at 1 (Docket # 20).  Also plaintiffs request that
the Court compel production of document 113, however, that
document does not exist in the record as the *Vaughn* Index ends at
document 107.  Finally, plaintiffs request that the Court compel

assert that defendant has not provided an exhaustive list of documents still at issue, and the documents listed by plaintiffs in their briefs are "by way of example," the Court considers only the documents listed by defendant and those specifically mentioned in plaintiffs' briefs: 2-5, 9, 10, 12, 27, 30, 33-35, 37, 41, 45, 46, 48, 49, 63, 65, 67, 69, 72, 77-81, 86, and 93.

Defendant has grouped all of the documents withheld pursuant to Exemption 5 into three categories (1-3).  Vaughn Index at 8-12.  Category 1 applies to "Federal Officials' Notes, Reports and Other Mental Impressions."  *Id.* at 8.  According to the Court's analysis, the documents still at issue withheld pursuant to Category 1 are as follows: 2-5, 9, 10, 12, 41, 45, 46, 48, 49, 63, 65, 67, 72, 77, 80, and 93.  Category 2 applies to "Work Plans, Status Reports, Briefings, and Proposals."  *Id.* at 10.  According to the Court's analysis, the documents still at issue withheld pursuant to Category 2 are as follows: 27, 30, 33-35, 37, 69, 78, 79, 81, 86, and 93.[5]  Category 3 applies to "Draft Documents."  *Id.* at 11.  According to the Court's analysis, the

---

production of document 83 pursuant to an improper Exemption 5 withholding.  However, document 83 is withheld pursuant to Exemption 6 and is therefore not relevant to this Court's Exemption 5 analysis.  *See Vaughn* Index at 74.

[5] Document 93 is withheld pursuant to Exemption 5 categories 1, 2, and 3.  Accordingly, the Court will only assess the adequacy of Exemption 5 with regard to document 93 in Section II.D.2 of the Analysis (Exemption 5 category 2 withholdings).

documents still at issue withheld pursuant to Category 3 are as follows: 27, 69, 79, and 93.[6]

1. **Category 1 Documents:  2-5, 9, 10, 12, 41, 45, 46, 48, 49, 63, 65, 67, 72, 77, and 80**

The Court finds that the majority of defendant's Category 1 documents that are still at issue are both predecisional and deliberative, and therefore appropriately withheld pursuant to Exemption 5.  Specifically, the following documents (with brief descriptions from defendant's *Vaughn* Index) were properly withheld under Exemption 5 because they reflect recommendations or opinions prepared in order to assist defendant in arriving at a decision with regard to the Lincoln Memorial video revision project:

Document 2: describes "preliminary discussions about the Lincoln Memorial Videotape . . . deliberations on how to address the controversy . . . possible additions or changes to the videotape";

Document 3: describes "concern of the need for quick recommendations for changes to the video and that these changes receive priority attention . . . need for cost options and for streamlining of initial decision-making process . . . discussion between National Park Service management and Park Management of need to move quickly on possible edit choices for videotape and

_____

[6] All the documents withheld pursuant to Category 3 are also withheld pursuant to Category 2.

which choices would be appropriate for the Assistant Secretarial level . . . discusses possible guidance for videotape changes . . . describes the initial suggestions on the editing process that includes some scenes added and other scenes removed . . . [and] also describes suggestions of other, additional scenes that could be added without eroding the initial, existing message of the video . . . discussion of the appropriateness of various scenes that could be added to the video";

Document 4: describes essentially the same predecisional and deliberative aspects as document 3;

Document 5: describes "NPS employee's perceived reaction to a television show" addressing the Lincoln memorial videotape issue;

Document 9: describes "reactions to and interest in news coverage . . . what this may mean for the NPS and what direction is to be considered" dealing specifically with "Fox News and Lincoln Video";

Document 10: describes "initial impressions and reactions to the content of the CNSNews.com story" dealing with the Lincoln Video;

Document 12: describes "initial thoughts and reaction to the Lincoln Memorial videotape description from the CNS story . . . . [S]peculate[s] and describe[s] perceived reactions to the story";

Document 41: describes "suggested footage list" and "opinions on the on-going progress of the video project";

Document 45: describes "initial and preliminary thoughts and reactions of an NPS employee regarding a proposed news story and the Lincoln Memorial" and its "possible effects";

Document 48: describes "initials reactions to and perceived, possible interest in news coverage by Fox News on the Lincoln video";

Document 49: describes "thoughts, opinions and personal impressions of an NPS employee regarding the content of the Lincoln Memorial video";

Document 63: describes "reaction on how best to proceed with requests for comment on the videotape project . . . [and] contains . . . suggestions on how to best proceed with the request";

Document 65: describes "impression and a hypothesis about how the videotape controversy began . . . initial impressions of the exhibit and videotape, and . . . possible changes to the videotape" with regard to "[p]ossible Lincoln Memorial [s]olution";

Document 67: describes "expectations and concerns on work to be done on the project" and "recommendations on possible options for the Lincoln Memorial project";

Document 77: describes essentially the same predecisional and deliberative aspects as document 63;

Document 80: describes "thoughts and personal impressions from park rangers regarding" censorship at the National Park Service and "recommendations on how best to proceed with the [Lincoln video] project".  Vaughn Index at 15-72.

Using document 5 from the *Vaughn* Index as an example, plaintiffs contend that this "description[] illustrate[s] that these withholdings do not, as is required for withholding under Exemption 5, either make a recommendation or express an opinion on [defendant's] changes to the September 2003 Video."  Pls.' Opp'n at 10.  Defendant, however, asserts that the *Vaughn* Index is clear that the subject of the email is "MSNBC Request for NPS Live Interview regarding Lincoln Memorial Videotape."  *Vaughn* Index at 20.  Accordingly, the redaction deals with "an NPS employee's reaction . . . to a television interview about this [video revision] issue."  Def.'s Mem. in Supp. at 14-15. Defendant indicates in the *Vaughn* Index that this document was within "Category 1" withholdings pursuant to Exemption 5 which "record . . . authors' personal interpretations, recollections, and impressions of candid discussions . . . in the early and middle stages of the ongoing examination of the appropriateness of the Video."  *Vaughn* Index at 9.

A perceived reaction to a television show specifically about the Lincoln Memorial video issue adequately satisfies both the deliberative and predecisional requirements of Exemption 5.  The material is predecisional because it involves a reaction, prompted by another employee's question, to the Lincoln Memorial video issue during the time in which defendant was considering revising the video.  It is deliberative because it reflects the consultative process between two of defendant's employees addressing a show dealing with the very issue of the Lincoln Memorial videotape and media involvement.

Because the Court finds that defendant has met its burden of justifying the applicability of Exemption 5 to documents 2, 3, 4, 5, 9, 10, 12, 41, 45, 48, 49, 63, 65, 67, 77, and 80, the Court **GRANTS** defendant's motion for summary judgment and **DENIES** plaintiffs' motion to compel with regard to the applicability of Exemption 5 to those documents.

The Court finds the following documents were improperly withheld pursuant to Exemption 5, and are therefore subject to disclosure:

Document 46: describes "initial reaction and predecisional guidance relating to upcoming events at the Lincoln Memorial";

Document 72: lists names of "Lincoln scholars" as "potential experts" that could be utilized for consultation on historical accuracy by NPS.  *Vaughn* Index at 47, 67.

33

With regard to document 46, "upcoming events at Lincoln Memorial" could apply to a variety situations and the description does not necessarily reflect recommendations regarding policy or legal decisions or deliberative give-and-take characteristics specific to the change in the Lincoln Memorial video. Defendant's description fails to provide the Court with sufficient justification as to how or why these "upcoming events" are in any way related to the revision of the Lincoln Memorial video or any type of governmental policy formulation or decision.

With respect to document 72, the Court finds that the reasoning in *Association of National Advertisers, Inc. v. Federal Trade Commission*, 1976 WL 1294 (D.D.C. July 15, 1976), persuasive.  Although *Association of National Advertisers, Inc.* involved experts who had actually been consulted and this case involves a list of potential experts, the logic the court used with respect to the consulted experts still applies.  In *Association of National Advertisers, Inc.*, the court based its reasoning on the proposition that disclosure of experts' names and addresses, as opposed to their opinions, "would not . . . chill[] . . . their advice or recommendations to the agency." 1976 WL 1294, at *2.  In ordering the disclosure of expert names and addresses, the court explained that "as experts they are members of a profession which demands the rendition of advice to many groups.  They should expect the fact of rendition to

eventually become public." *Id.*  The court further explained that "[p]rotection of the content of the advice rendered . . . adequately serve[s] the purpose of encouraging frank discussion." The list of potential Lincoln scholars in this case is factual and simply indicates the names of experts who could be "consult[ed] on historical accuracy." *Vaughn* Index at 76.  The list does not reflect the content of any advice rendered. Defendant has not made it clear to the Court how or why the disclosure of the name of a Lincoln historical scholar as a potential expert would harm the agency decision making process.

Accordingly, because defendant has not satisfied its burden with regard to the applicability of Exemption 5 to documents 46 and 72, this Court **DENIES** defendant's motion for summary judgment and **GRANTS** plaintiffs' motion to compel with respect to these documents.

### 2.   Category 2 and 3 Documents: 27, 30, 33-35, 37, 69, 78, 79, 81, 86, and 93

The Court finds the following documents to be predecisional and deliberative, and therefore appropriately withheld pursuant to Exemption 5:

Document 27: describes "footage proposed for inclusion in the Lincoln Memorial video";

Documents 33-35, 37, 69, 93: describe essentially the same material as document 27;

Document 30: describes "guidance and suggestions . . . on how to proceed on the Lincoln Memorial project" and "concern . . . over the on-going progression of the Lincoln Memorial video";

Document 78: describes NPS managers' discussions and concerns about the Lincoln Memorial Exhibit Project and concerns with regard to "space allocations, financial authorization and future meetings";

Document 79: "draft of a briefing statement prepared by [defendant] for a member of the U.S. Congress";

Document 81: describes "possible alternatives . . . on how to move forward with the interactive elements and components for the Lincoln Memorial Exhibit project" and "alternative solutions," "potential design costs,"and "plans not yet adopted";

Document 86 - *in part*: describes "employee's personal impressions regarding current issues surrounding the [Lincoln Memorial] video" and "an employee's opinion on the status of the work in progress" on the video project".  Vaughn Index at 29-87.

The above list of documents are all recommendations and opinions prepared in order to assist defendant in arriving at a decision with regard to the Lincoln Memorial video revision project.  With regard to the documents dealing with suggested footage for the Lincoln Memorial video, the footage requests are components of the give-and-take of agency decision making.  In

considering revisions to the Lincoln Memorial video, footage requests and considerations of which footage to use are essential elements of the deliberative process.

With regard to document 79, plaintiffs assert that this document is improperly withheld as, even though it is a draft, it does not reflect predecisional or deliberative information. However, drafts are commonly found exempt under the deliberative process exemption.  *See City of Va. Beach v. U.S. Dep't of Commerce*, 995 F.2d 1247, 1253 (4th Cir. 1993).  Moreover, the *Vaughn* Index description for document 79 indicates that the "draft . . . includes information on key points, background, and current status of the exhibit project," *Vaughn* Index at 72, which indicate both predecisional and deliberative characteristics sufficient for exemption.

Because the above-referenced documents were properly withheld under Exemption 5, the Court **GRANTS** defendant's motion for summary judgment and **DENIES** plaintiffs' motion to compel with regard to the applicability of Exemption 5 to documents 27, 30, 33-35, 37, 69, 78, 79, 81, 86 *in part*, and 93.

The Court finds that a portion of document 86 was improperly withheld pursuant to Exemption 5.  The part of 86 improperly withheld is described in the *Vaughn* Index as follows: "employee's recollection on the process used by the NPS in the development of the original Lincoln memorial Video."  *Vaughn* Index at 77-78.

Although defendant's *Vaughn* Index and Line Declaration are accorded the "presumption of good faith" and are given "substantial weight," a "recollection on the process used by the NPS in the development of the *original* Lincoln memorial Video" does not satisfy the predecisional and deliberative requirements of Exemption 5.  A recollection on the process used to create the *original* Lincoln memorial video is a "statement[] explaining actions already taken by an agency" which is not protected by the deliberative process exemption.  *See Tax Analysts*, 483 F. Supp. 2d at 13 (explaining deliberative process exemption does not apply to "final statement of agency policy or statements explaining actions already taken by an agency").  Defendant has not satisfied its burden of establishing what deliberative process is involved and the role played by this portion of this document in the course of that process.  *See Coastal States Gas Corp.*, 617 F.2d at 868.  Accordingly, the Court **DENIES** defendant's motion for summary judgment and **GRANTS** plaintiffs' motion to compel with respect to the portion of document 86 containing recollections of the process used in developing the original video.

### E.   Exemption 6 Withholdings

Exemption 6 allows an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

5 U.S.C. § 552(b)(6).  The Supreme Court has read "similar files"

broadly to include any "[g]overnment records on an individual

which can be identified as applying to that individual."  *U.S.*

*Dep't of State v. Washington Post, Co.*, 456 U.S. 595, 601-602

(1982) (explaining the propriety of an agency withholding does

not "turn upon the label of the file which contains the damaging

information").  The D.C. Circuit has read the statute "to exempt

not just files, but also bits of personal information such as

names and addresses, the release of which would 'create[] a

palpable threat to privacy.'"  *Judicial Watch, Inc. v. FDA*, 449

F.3d at 198 (citations omitted).  However, "the statute does not

categorically exempt individuals' identities . . . because the

'privacy interest at stake may vary depending on the context in

which it is asserted.'"  *Id.* (citations omitted).

To determine whether a disclosure would constitute a

"clearly unwarranted invasion of personal privacy," the Court

employs a balancing test, weighing "the private interest involved

(namely, 'the individual's right of privacy') against the public

interest (namely, 'the basic purpose of the Freedom of

Information Act,' which is 'to open agency action to the light of

public scrutiny')."  *Id.* (citations omitted).  Therefore, to

justify withholding information under Exemption 6, the agency

must establish that the invasion of an individual's privacy

interests would be "clearly unwarranted" by disclosure of such

information.  *U.S. Dep't  of State v. Ray*, 502 U.S. 164, 172

(1991).  The Supreme Court has indicated that "[e]xemption 6 was

directed at threats to privacy interests more palpable than mere

possibilities."  *Dep't of the Air Force v. Rose*, 425 U.S. 352,

381 n.19 (1976), and the D.C. Circuit has explained that there

must be a "substantial probability that the disclosure will lead

to the threatened invasion," *Nat'l Ass'n of Retired Fed.*

*Employees v. Horner*, 879 F.2d 873, 878 (D.C. Cir. 1989).

The privacy interest in nondisclosure encompasses an

individual's control of personal information and is not limited

to that of an embarrassing or intimate nature.  *Washington Post,*

*Co.*, 456 U.S. at 600.  The weight of the public interest in

disclosure "depends on the degree to which disclosure would shed

light on an agency's performance of its statutory duties and its

compliance with the law."  *Judicial Watch of Florida, Inc. v.*

*U.S. Dep't of Justice*, 102 F. Supp. 2d 6, 17 (D.D.C. 2000).

Accordingly, to assess the public interest, the Court must

examine "the nature of the requested document and its

relationship to the basic purpose of [FOIA] to open agency action

to the light of public scrutiny."  *Id.* (quoting *U.S. Dep't of*

*Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S.

749, 773 (1989)).  Under FOIA, the public interest is not

furthered "by disclosure of information about private citizens

that is accumulated in various governmental files but that

reveals little or nothing about an agency's own conduct."
*Reporters Comm.*, 489 U.S. at 773.

Federal courts have previously recognized a privacy interest
in a person's name and address. *See Reed v. NLRB*, 927 F.2d 1249,
1251 (D.C. Cir. 1991) (holding NLRB employees have a "legitimate
privacy interest in their names and addresses" and therefore NLRB
*Excelsior* lists containing names and addresses of all employees
eligible to vote were properly withheld pursuant to Exemption 6);
*see also Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879
F.2d at 875 (holding "the privacy interest of an individual in
avoiding the unlimited disclosure of his or her name and address
is significant").  However, "exemption 6 requires more than just
a demonstrated privacy interest; it requires a showing that a
disclosure of the commenters' names and addresses would result in
a '*clearly unwarranted* invasion of personal privacy.'"  *Alliance
for the Wild Rockies v. Dep't of the Interior*, 53 F. Supp. 2d 32,
36 (D.D.C. 1999) (emphasis in original).  Accordingly, with
regard to the applicability of Exemption 6 to names and home
addresses, federal courts have differed in their conclusions when
employing the private interest/public interest balancing test.
*Compare Lakin Law Firm, P.C. v. FTC*, 352 F.3d 1122, 1124 (7th
Cir. 2003) (holding disclosure of identity of consumers'
complaints about "cramming" to law firm requesting identities
seeking to propel a possible class-action lawsuit would not

41

further the purpose of FOIA and so Exemption 6 applied), *and Strout v. U.S. Parole Comm'n*, 40 F.3d 136, 139 (6th Cir. 1994) (holding strong privacy interests of individuals who wrote letters opposing a parole request justified withholding names and addresses from disclosure pursuant to Exemption 6), *and Kidd v. Dep't of Justice*, 362 F. Supp. 2d 291, 297 (D.D.C. 2005) (holding "[p]roviding personal identifying information commonly found in constituent letters [to Congresspersons] does not advance the purpose of FOIA and, as such, may be withheld from FOIA requests"), *and Voinche v. FBI*, 940 F. Supp. 323, 329-30 (D.D.C. 1996) ("There is no reason to believe that the public will obtain a better understanding of the workings of various agencies by learning the identities of . . . private citizens who wrote to government officials."), *with Lardner v. U.S. Dep't of Justice*, 2005 WL 758267, at *18 (D.D.C. Mar. 31, 2005) (holding public interest in identifying those who are able to exert influence on the presidential pardon power outweighed modest privacy interest), *and Judicial Watch of Florida, Inc. v. U.S. Dep't of Justice*, 102 F. Supp. 2d 6, 18 (D.D.C. 2000) (explaining "[d]epriving the public of knowledge of the writer's identity would deprive the public of a fact which could suggest that their Justice Department had been steered by political pressure rather than by the relevant facts and law"), *and Alliance for the Wild Rockies*, 53 F. Supp. 2d at 36-37 (holding names and addresses of

42

individuals' who submitted written comments on proposed
rulemaking regarding the reintroduction of the grizzly bear into
the Bitterroot ecosystem could not be withheld pursuant to
Exemption 6 because of public interest in disclosure).

Alleging the applicability of Exemption 6, defendant
withholds the names and contact information, including home
addresses, telephone numbers, and personal e-mail addresses of
members of the public who submitted unsolicited email comments to
defendant concerning the proposed change of the video on display
at the Lincoln Memorial.[7]  Def.'s Mem. in Supp. at 21.  Defendant
asserts that it released all information in each and every one of
the emails except that it withheld (by redaction) the personal
information described above.  Plaintiffs, however, contend that
"the voluntary submissions by concerned citizens do not represent
the personal information that Exemption 6 is designed to
protect."  Pls.' Mot. to Compel at 17.  Accordingly, plaintiffs
assert that the considerable public interest in identifying
actors who are able to exert influence on agency decisions

---

[7] Defendant asserts that the following records are at issue
with regard to Exemption 6: 11, 13, 14, 52-58, 73, 75, 91 and
107.  Def.'s Statement of Material Facts ¶ 26.  Plaintiffs assert
that they contest all of defendant's Exemption 6 withholdings.
Pls.' Response to Def.'s Statement of Material Facts ¶ 26.
Because the question before the Court with regard to Exemption 6
applies equally to all Exemption 6 withholdings, the Court need
not decide which documents are still at issue.

outweighs any potential privacy interests, therefore warranting disclosure.

The Court finds that the law supports plaintiffs' position with regard to the withholding of commenters' names pursuant to Exemption 6.  In *Lardner*, the court specifically noted that "[w]hen a citizen petitions his government to take some action, courts have generally declined to find the identity of the citizen to be information that raises privacy concerns under exemption 6."  *Lardner*, 2005 WL 758267, at *18 (citing *Landmark Legal Foundation v. IRS*, 87 F. Supp. 2d 21, 27 (D.D.C. 2000)); *see also Alliance for Wild Rockies*, 53 F. Supp. 2d at 37. Further, in *Alliance for Wild Rockies*, the plaintiffs sought the disclosure of names and addresses of individuals that had submitted comments to defendant in response to the notice of proposed rulemaking with regards to the reintroduce of the grizzly bear into the Bitterroot ecosystem.  *Alliance for Wild Rockies*, 53 F. Supp. 2d at 34.  The court held that the public had a great deal to learn from the disclosure of commenters' names and addresses:

> [t]he public will be able to determine how the defendants use the written comments in reaching a final rule; whether the defendants give greater weight to the comments submitted by experts in the field over the comments of laypeople; . . . and whether the defendants give greater weight to the comments submitted by residents of the Bitterroot region and the outlying regions than to the comments submitted by those who do not live within close proximity to the Bitterroot region.

*Id.* at 37.   The court also indicated that its decision "rest[ed] in part on the fact that the comments, which bear the commenters' names and addresses, were submitted voluntarily."   *Id.*

The Court adopts the reasoning in *Lardner* and *Alliance for the Wild Rockies* with respect to the disclosure of the names of those who sent comments to NPS.   Even though *Lardner* and *Alliance for the Wild Rockies* involved comments on a proposed rulemaking and this case involves comments on a proposed policy decision, all three cases involve a "citizen petition[ing] his government to take *some action*," *Lardner*, 2005 WL 758267, at *18 (emphasis added).   Disclosing the mere identity of individuals who voluntarily submitted comments regarding the Lincoln video does not raise the kind of privacy concerns protected by Exemption 6. *See id.*   Moreover, the public interest in knowing who may be exerting influence on NPS officials sufficient to convince them to change the video outweighs any privacy interest in one's name. *See id.*   Accordingly, defendant has not adequately demonstrated why the names of individuals who voluntarily wrote to defendant with regard to the Lincoln Memorial video should be exempt from disclosure.   Therefore, this Court **DENIES** defendant's motion for summary judgment and **GRANTS** plaintiffs' motion to compel with regard to the names of individuals who wrote to defendant withheld pursuant to Exemption 6.

45

However, the Court finds that the law supports defendant's position with regard to the withholding of commenters' phone numbers and personal addresses pursuant to Exemption 6. Generally, there is a stronger case to be made for the applicability of Exemption 6 to phone numbers and addresses.  *See Judicial Watch of Florida, Inc.*, 102 F. Supp. 2d at 17-18 (granting summary judgment to agency with regard to the withholding of home addresses and telephone numbers but denying summary judgment with regard to names).  The standard by which the Court considers public interests is whether disclosure would shed light on agency conduct.  *Id*.  Moreover, the Supreme Court has expressed that the public interest is not furthered "by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about the agency's own conduct."  *Reporters Comm.*, 489 U.S. at 773.  Although plaintiffs request that the Court compel defendant to produce all documents withheld pursuant to Exemption 6 in their entirety, it is unclear what the public would learn about agency conduct by the disclosure of personal addresses and phone numbers.  Plaintiffs argue for disclosure in order to determine which actors are able to exert power over agency decisions, and neither personal addresses nor phone numbers would

assist in this determination.[8]   Accordingly, the Court **GRANTS**
defendant's motion for summary judgment and **DENIES** plaintiffs'
motion to compel with regard to phone numbers and personal
addresses withheld pursuant to Exemption 6.

Defendant has also withheld commenters' personal e-mail
addresses, again alleging the applicability of Exemption 6.
There is very limited case law dealing with the applicability of
Exemption 6 to personal e-mail addresses, and neither of the
parties have specifically addressed the issue (both argue for
complete disclosure or complete exemption with regard to personal
information).   It is unclear to the Court what public benefit
would be gained by disclosure of personal e-mail addresses that
would not be gained by the disclosure of commenters' names.

---

[8] Plaintiffs argue that the case *Alliance for Wild Rockies*
is "particularly instructive" with regard to defendant's
Exemption 6 withholdings.  Pls.' Mot. to Compel at 16.  In
*Alliance for Wild Rockies*, the Court required the disclosure of
names and addresses of individuals who submitted written comments
with regard to proposed rulemaking addressing the reintroduction
of the grizzly bear into the Bitterroot ecosystem.  *Alliance for
Wild Rockies*, 53 F. Supp. 2d at 34.  Although the Court compelled
the disclosure of addresses, the Court reasoned that the
disclosure would allow the public to determine "whether the
defendants give greater weight to the comments submitted by
residents of the Bitterroot region and the outlying regions than
to the comments submitted by those who do not live within close
proximity to the Bitterroot region."  *Id.*  Accordingly, the
geographical location of each commenter was particularly
relevant.  In the present case, plaintiffs' have not indicated
any apparent significance attached to the individual commenters'
geographical locations.  Plaintiffs FOIA request with regard to
these Exemption 6 withholdings is concerned with *who* is able to
exert influence on agency decisions not *where* they live.

However, because the parties have not specifically addressed the issue and because all of plaintiffs' objections may be resolved by the release of the commenters' names, this Court **DENIES** defendant's motion for summary judgment and **DENIES** plaintiffs' motion to compel with respect to e-mail addresses, thereby allowing plaintiffs and defendant the opportunity to attempt to resolve this issue in the first instance after the disclosure of the commenters' names.

    **F.**    *In Camera* **Review**

    FOIA authorizes the Court to examine requested agency records *in camera* to determine the propriety of withholdings. 5 U.S.C. § 552(a)(4)(B); *Spirko v. U. S. Postal Serv.*, 147 F.3d 992, 996 (D.C. Cir. 1998).  The decision to examine requested records *in camera* is left to the  "broad discretion" of the Court.  *Id.*  *In camera* review may be appropriate when: "agency affidavits are insufficiently detailed to permit meaningful review of exemption claims,"; "the number of records involved is relatively small,"; "a discrepancy exists between an agency's affidavit and other information that the agency has publicly disclosed"; and "when the dispute turns on the contents of the documents, and not the parties' interpretations of the documents." *Elec. Privacy Info. Ctr.*, 384 F. Supp. 2d at 119 (citations and quotations omitted).  "Ultimately, however, courts disfavor *in camera* inspection and it is more appropriate in only

the exceptional case."  *Id.*; *see also PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 253 ("[*I*]*n camera* review is generally disfavored.").

Plaintiffs request that the Court compel *in camera* review should the Court conclude that defendant's *Vaughn* Index and Line Declaration contain insufficient detail to determine the applicability of claimed exemptions.  Pls.' Motion to Compel at 18-19.  Because defendant's descriptions and justifications are adequate, this Court **DENIES** plaintiffs' request for *in camera* review.

## G.   Discovery

FOIA actions typically do not involve discovery.  *Voniche*, 412 F. Supp. 2d at 71; *see also Wheeler v. CIA*, 271 F. Supp. 2d 132, 139 (D.D.C. 2003) ("Discovery is generally unavailable in FOIA actions.").  Federal courts have consistently ruled that discovery should only be used in rare circumstances, and requests for discovery "should be denied where an agency's declarations are reasonably detailed, submitted in good faith and the court is satisfied that no factual dispute remains."  *See, e.g., Schrecker v. U.S. Dep't of Justice*, 217 F. Supp. 2d 29, 35 (D.D.C. 2002).  When discovery requests are granted, the scope is "usually limited to the adequacy of the agency's search and similar matters."  *Voniche*, 412 F. Supp. 2d at 71.

Plaintiffs request that "[i]f the Court is not prepared to deny [defendant's] motion at this time, [p]laintiffs move . . . for a continuance to permit them to take the deposition of William Line and conduct other limited discovery as set forth in the Declaration of Stephanie K. Vogel." Pls.' Opp'n at 7-8. Plaintiffs contend that "[t]his discovery will provide [p]laintiffs with sufficient information to evaluate meaningfully [defendant's] response to the [FOIA] Request and its withholdings." *Id.* at 8. Plaintiffs, however, did not seek discovery in their original motion, and first requested discovery in their opposition to defendant's motion for summary judgment. Accordingly, defendant contends that this discovery request is "'procedurally improper'. *Atkins v. Fischer*, 232 F.R.D. 116, 137 (D.D.C. 2005) (citations omitted)." Def.'s Reply at 16. Further, defendant contends that plaintiffs' request exceeds normal bounds of discovery in FOIA cases, and accordingly, plaintiffs' request should be denied. *Id*. at 16-18. Because discovery is the exception and not the rule, *see Voniche*, 412 F. Supp. 2d at 71, and because defendant's *Vaughn* Index and Line Declaration are adequate and reasonably detailed, this Court **DENIES** plaintiffs' request to compel discovery.

## II.  APA Claim

Plaintiffs' also claim that defendant violated of the Administrative Procedure Act.  Plaintiffs contend that

"[defendant's] failure to disclose documents responsive to [p]laintiffs' request constitutes agency action unlawfully withheld and unreasonably delayed, in violation of the APA, 5 U.S.C. §§ 701-06." Compl. ¶ 31-32. Defendant moves the Court to grant summary judgment on this second claim as well, contending that "an agency's failure to comply with the FOIA time limits and failure to release all records responsive to [p]laintiffs' FOIA request are not, in and of themselves, actionable under the APA." Def.'s Mem. in Supp. at 24.

A separate action under the APA is unavailable in this case because FOIA provides an adequate remedy. *Edmonds Inst.*, 383 F. Supp. 2d at 111) ("The law is clear . . . that review under the APA is unavailable when another statute provides an adequate remedy." (citing *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988))); *see also People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 2007 WL 1720136, at *7 (D.D.C. June 11, 2007) ("The APA authorizes judicial review only when the challenged agency action is final and when there is no other adequate remedy . . . . Thus, an APA claim is precluded where a remedy under FOIA is available"). Accordingly, the Court **GRANTS** defendant's motion for summary judgment with regard to plaintiffs' APA claim.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** plaintiffs' motion to compel and **GRANTS in part and DENIES in part** defendant's motion for summary judgment.  An appropriate Order accompanies this Memorandum Opinion.

Signed:     **Emmet G. Sullivan**
            **United States District Judge**
            **August 27, 2007**